IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE § § | |
| BLAINE BRUCE BRUNDAGE § § | |
| Debtor, § § § | CIVIL ACTION NO. H-14-00757 |
| ------------------------------------------------- § § | |
| WANDA SHEFFIELD ANDERSON, § § | |
| Defendant-Appellant, § § | BANKRUPTCY CASE NO. 12-35869 |
| VS. § § | |
| BLAINE BRUCE BRUNDAGE, § § | |
| Plaintiff-Appellee. § | |

**MEMORANDUM AND OPINION**

Bruce Brundage and William Anderson had a business relationship that resulted in Anderson acquiring multiple liens against Brundage's real property. In 2012, Brundage filed for bankruptcy protection under Chapter 11. Anderson's widow, Wanda Anderson, filed a proof of claim as executrix of Mr. Anderson's estate, based on Brundage's unpaid loans and the liens Mr. Anderson had obtained on Brundage's property. The critical issues in the adversary proceeding that followed were whether approximately 101 acres of Brundage's real property was exempt as a homestead under Texas law and the value of the first lien on Brundage's property on the date it was transferred to Mr. Anderson. The bankruptcy court conducted a bench trial at which Brundage, Mrs. Anderson, and her attorney, Erwin Wilbanks, testified. (*See* Docket Entry No. 3, Exs. 34-35).

The bankruptcy court issued findings and conclusions, from which Mrs. Anderson appeals.

1

The court found that Brundage's 101-acre property was exempt as a homestead under Texas law; that the second lien on this property was executed after Brundage began using it as his homestead and was invalid under Texas Constitution Art. XVI, §§ 50-51, and the Texas Property Code 40.001 *et seq.*, (Docket Entry No. 3, Ex. 37 at 2); that the prior lien, which Mr. Anderson had also acquired, was executed before Brundage began using the property as his homestead and was valid; and that the value of that lien was $100,000 on the date it was transferred to Mr. Anderson, (*id.*, at 17).

Mrs. Anderson identifies the following issues on appeal:

1.  Did the Bankruptcy Court err when it established 101.247 acres located at 20077 Triple L Lane, New Ulm, Texas as the Debtor's exempt homestead?

2.  Did the Bankruptcy Court err when it held that Defendant's secured first lien against the 101.247 acres was valued at $100,000 on the date the first lien was transferred to Defendant?

(Docket Entry No. 3, Ex. 38).

Based on the the record and the applicable law, the court affirms the bankruptcy court's findings and conclusions as to the first issue but concludes that the bankruptcy court clearly erred in finding and concluding that the secured first lien was valued at $100,000 on the date it was transferred to Mr. Anderson. The order is reversed in part and the action remanded for further proceedings consistent with this opinion. The reasons are set out below.

**I.      Background**

On August 30, 2005, Brundage bought 101 acres of real property from Lawrence and Lisa Lindley for $765,330.70. (Docket Entry No. 3, Ex. 37 at 7). The Lindleys financed $695,000, and Brundage signed a note promising repayment in 72 monthly installments at an interest rate of 6.5%. (*Id.*). The note gave the Lindleys a first lien on the property.

Brundage and Mr. Anderson were involved in various business transactions. (*Id.*, at 8). On

August 27, 2009, Mr. Anderson loaned Brundage $400,000, secured by a second lien against Brundage's property. (*Id.*). Mr. Anderson had the Belleville Abstract Co. conduct a formal closing related to the second lien. The closing documents reflected Brundage's ownership of the approximately 101 acres and the Lindleys' prior lien on that property. (*Id.*). Brundage estimated the unpaid balance on the Lindleys' note to be approximately $350,000. (Docket Entry No. 3, Ex. 17 at 55).

On August 17, 2011, Mr. Anderson purchased the Lindleys' note and the Lindleys assigned their lien to Mr. Anderson. (Docket Entry 3, Ex. 37 at 9). It is undisputed that Mr. Anderson paid the Lindleys $100,000. (Docket Entry No. 7, at 3). The parties dispute the amount due and owing on that lien at the time Mr. Anderson acquired it from the Lindleys. That same day, at Mr. Anderson's request, Brundage signed an "Agreement" summarizing his debts to Mr. Anderson. (*Id.*). The Agreement stated as follows:

> I [Mr. Anderson] need this signed agreement in order to have our affairs in order. Because of your [Brundage's] present financial condition, you owe me the following amounts of money:
>
> . . .
>
> 6.  100,000.00 plus accrued interest on my purchase of that certain Promissory Note dated August 30, 2005, between Larry and Lisa Lindley and being secured by a Vendors Lien and Deed to Trust on the property described in 1. above.
>
> You have represented to me there is currently due and owing on the Note referenced in 6. Above [sic] an approximate amount of $240,000.00 plus accrued interest. . . .

(*Id.*, at 3-4).

On August 6, 2012, Brundage filed for bankruptcy protection. (*Id.*, at 4). Brundage filed schedules stating that his 101-acre property was subject to a $100,000 secured lien and an

3

unsecured lien for an additional $100,000.  (Docket Entry No. 3, Ex. 35 at 10-12; *see also* Docket Entry No. 7, at 5).  He also asserted a homestead exemption as to the second lien.

On September 7, 2012, Mrs. Anderson filed a proof of claim for the note and the lien Mr. Anderson had obtained in 2011.  (Docket Entry No. 7, at 4).  The proof of claim consisted of the proof-of-claim form, a one-page calculation of the total amount due, an amortization schedule, and copies of the first lien note, deed of trust, and transfer of liens and note.  (*Id.*).  The proof-of-claim form stated that on the date Brundage filed for bankruptcy protection, he owed $382,526.47 on the note.  (*Id.*, at 5).

The bankruptcy court heard testimony on Anderson's claims against the bankruptcy estate on November 18 and 20, 2013.  Brundage testified that his schedules were accurate and his property encumbered by a secured $100,000 lien and an unsecured $100,000 lien.  (Docket Entry No. 3, Ex. 35 at 10-12).  Anderson testified regarding the validity of the proof of claims submitted to the court on her behalf by Wilbanks.  (*See* Docket Entry No. 3, Ex. 34 at 16-18).  Wilbanks testified that the figures contained in the proof of claims, specifically the $382,526.47 figure owed on the first lien, were accurate in light of Mr. Anderson's records.  (*See* Docket Entry No. 3, Ex. 35 at 44-46).

The bankruptcy court found that Brundage's 101-acre property was exempt as his homestead when Mr. Anderson acquired the second lien.  (*See* Docket Entry No. 3, Ex. 38; *see also* Docket Entry No. 3, Ex. 37 at 17).  Although Mrs. Anderson identified this finding as an issue in her notice of appeal, she conceded in her opening brief that "[g]iven the applicable standard of review, there may be no room to reverse [the bankruptcy court's] findings regarding the homestead issue." (Docket Entry No. 7, at 2).  Mrs. Anderson did not mention the issue again in either her opening or reply brief.  (*See* Docket Entry Nos. 7, 13).  Brundage asserts that "Mrs. Anderson's Brief to this

Court abandons [the homestead] claim . . . ." (Docket Entry No. 11, at 10). The court agrees that Mrs. Anderson has abandoned any argument on the homestead issue on appeal. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised *and argued* in its *initial* brief on appeal.") (first emphasis added).

The bankruptcy court also found that the first lien—which the parties agree was not subject to the homestead exemption—was valued at $100,000 on the date it was transferred to Mr. Anderson. (*See* Docket Entry No. 3, Ex. 38; *see also* Docket Entry No. 3, Ex. 37 at 17). Mrs. Anderson claims that although "Mr. Anderson *paid* $100,000 for [the] note, . . . the amount of principal still *owing* on it when Mr. Anderson purchased it was $262,894.31." (Docket Entry No. 7, at 2). Mrs. Anderson claims that the note remained unpaid after it was transferred to Mr. Anderson and that interest continued to accrue. (*Id.*). Mrs. Anderson asks this court to reverse the bankruptcy court's order in part and hold that Mr. Anderson had a secured claim for $382,526.47—not $100,000—against Brundage's property when the bankruptcy began.

The issues are analyzed against the record and applicable law.

**II.     Analysis**

    **A.     The Standard of Review**

A district court reviews a bankruptcy court's findings of fact for clear error. *In re Ahern Enters., Inc.*, 507 F.3d 817, 820 (5th Cir. 2007). A "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *First Nat'l Bank v. Crescent Elec. Supply Co. (In re Renaissance Hosp. Grand Prairie Inc.)*, 713 F.3d 285, 293 (5th Cir. 2013) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)). "This standard plainly does not entitle

a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Id*. "If the [trial] court's account of the evidence is plausible in light of the record viewed in its entirety, the [reviewing] court . . . may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 293-94 (alterations in original). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 294.

"[D]ue regard shall be given to the opportunity of the bankruptcy court to judge the credibility of . . . witnesses." *Id.* at 293. "Factual findings 'based on determinations regarding the credibility of witnesses' demand 'even greater deference' because 'only the [bankruptcy] judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.'" *Id.* "Greater deference" is owed to the bankruptcy court in situations where the court "was in a superior vantage point for finding facts." *See Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 228 (5th Cir. 1997); *see also Cooper v. Dept. of Navy*, 594 F.2d 484, 486 (5th Cir. 1979) (finding that "greater deference" was not owed because the reviewing court viewed "precisely the same evidence" as did the trial court, "from the same vantage point"). But to receive such deference, the testimony must be "coherent, internally consistent, and facially plausible," and "not contradicted by external evidence." *Bertucci Contracting Corp. v. M/V ANTWERPEN*, 465 F.3d 254, 259 (5th Cir. 2006). "If a finding is based on a mixed question of law and fact, this court should only reverse 'if the findings are based on a misunderstanding of the law or a clearly erroneous view of the facts.'" *Id.*

### B. The Homestead Issue

The record is clear that Mrs. Anderson has abandoned any argument about the homestead issue on appeal. *See Cinel*, 15 F.3d at 1345 ("An appellant abandons all issues not raised *and argued* in its *initial* brief on appeal.") (first emphasis added). The bankruptcy court's finding that Brundage's property was exempt as a homestead is affirmed.

### C. The Value of the First Lien

The second issue is whether the bankruptcy court erred in finding that the first lien against Brundage's land—which the parties agree did not qualify for the homestead exemption—was valued at $100,000 when Mr. Anderson acquired it. (*See* Docket Entry No. 3, Ex. 38; *see also* Docket Entry No. 3, Ex. 37 at 17). Mrs. Anderson argues that although Mr. Anderson paid $100,000, the outstanding principal amount, plus accrued interest, was $382,526.47 when the bankruptcy began, and that the secured lien is properly valued at that amount, not the $100,000 the bankruptcy court found. (*Id.*).

Brundage submitted schedules and testified that the property was encumbered by a secured lien for $100,000 and an unsecured lien for an additional $100,000. (Docket Entry No. 3, Ex. 35 at 10-12). The bankruptcy court did not expressly credit Brundage's testimony but did so implicitly in valuing the lien at $100,000 in August 2011. (*See* Docket Entry No. 3, Ex. 37 at 17). The court did not find credible the amortization schedule Mrs. Anderson relied on to support her claim that Brundage owed $262,894.31 on the note in June 2010 and that, with accrued interest, the lien value in August 2012 was $382,526.47. (*See* Docket Entry No. 13, at 4-5). The bankruptcy court dismissed the amortization schedule because the Andersons' attorney, Wilbanks, "admitted in testimony he did not have personal knowledge about the balance due on this . . . lien. Nevertheless,

7

Wilbanks created an amortization schedule . . . .  This Court finds that Wilbanks' amortization schedule . . . [is] not credible."  (Docket Entry No. 3, Ex. 37 at 11).

Mrs. Anderson argues that the other evidence in the record shows that the amortization schedule correctly valued the lien at $382,526.47, that Brundage's own prior statements are consistent with this amount, and that the only evidence to the contrary is Brundage's unsupported statement.  On August 27, 2009, Brundage signed an affidavit stating that he owed approximately $350,000 on the note.  (Docket Entry No. 3, Ex. 17 at 55; *cf.* Docket Entry No 3, Ex. 37 at 8-9 ("[Brundage] estimated the balance on the . . . lien to be *no more than* $350,000 as of August 27, 2009.") (emphasis added)).  Brundage stopped making note payments around June 2010.  (Docket Entry No. 3, Ex. 37 at 11; *see* Docket Entry No. 3, Ex. 35 at 58).  Because the note required Brundage to make $10,000 monthly payments, Brundage would have paid approximately $110,000 between August 2009 and June 2010, when he stopped making any payments.  She argues that Brundage owed approximately $240,000 on the note when the payments ended.  (*See* Docket Entry No. 13, at 3).  With interest, the unpaid amount was $382,526.47 when Brundage filed for bankruptcy, and it continues to grow.  (*See id.*, at 8).

The bankruptcy court's findings were the product of credibility determinations that are due "greater deference" than that typically required when searching for clear error.  *See Hall*, 105 F.3d at 228.  But that greater deference does not extend to findings that are implausible and unsupported by evidence.  *Anderson*, 470 U.S. at 575.  "[T]he [bankruptcy] judge may [not] insulate his [or her] findings from review by denominating them credibility determinations, for factors other than demeanor and inflection go into the decision whether or not to believe a witness."  *Id.*  "Documents or objective evidence may contradict the witness' story; or the story itself may be so internally

inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Id.* "Where such factors are present, the [district] court . . . may well find clear error even in a finding purportedly based on . . . credibility determination[s]." *Id.*

Brundage relies on his testimony and the schedules he created that simply reflect the face value of the note and lien. Neither party contends that the face value is the amount owing on the note when Mr. Anderson acquired it, which, with interest, is the value of the lien on the date the bankruptcy proceeding began. Mrs. Anderson relies on Brundage's own representations of the amount he owed on the note when Anderson acquired it, the note's payment terms and history, Brundage's admitted default, and the amortization schedule.[1] Brundage failed to submit any evidence corroborating his valuation of the first lien on his property, and he failed to make any showing contraverting the evidence Mrs. Anderson presented. In particular, he did not present or identify evidence showing that he made any payments beyond those required under the note before his default, or that he made any payments on the note after default. The imbalance in the evidence is clear. Mrs. Anderson's evidence showed why the $382,526.47 figure she identifies is accurate and reliable. Brundage offered nothing other than conclusory valuations of the first lien and did not explain or account for his own prior inconsistent statements—one in an affidavit—about the amount he owed on the note secured by the lien. Brundage's $100,000 valuation figure is implausible and unsupported by the evidence.

After reviewing the pleadings, the record, and the applicable law, the court is left with a

---

[1] The bankruptcy court found the amortization schedule to be not credible because Wilbanks lacked "personal knowledge about the balance due on the first lien." (Docket Entry No. 3, Ex. 37 at 11). But Wilbanks testified that the amortization schedule was contained in Mr. Anderson's own records. (*See* Docket Entry No. 3, Ex. 35 at 45-46). The amortization schedule was admitted in evidence and is consistent with the other evidence Mrs. Anderson presented.

"firm and definite conviction that a mistake has been committed." *See First Nat'l Bank*, 713 F.3d at 293. The bankruptcy court clearly erred in valuing the first lien on Brundage's property at $100,000 at the time of transfer to Mr. Anderson. Its findings and conclusions are reversed in part.

## IV.  Conclusion

The bankruptcy court's order of March 7, 2014 is reversed in part. This case is remanded to the bankruptcy court to reassess the value of the first lien on Brundage's property in light of the foregoing.

SIGNED on August 5, 2015 at Houston, Texas.

Lee H. Rosenthal
United States District Judge